Charles F. Claiborne,
        Judge.

Succession

of

John R. Gheens

No. 8006

February 21st, 1921.

Succession

of                               No. 8006

John R. Gheens

       Appeal from Civil District Court, Hon. Wynne G.
Rogers, Judge.

               CHARLES F. CLAIBORNE, JUDGE.

       The only question involved in this case is whether
the attorney for absent heirs is entitled to a fee.

       John R. Gheens, a bachelor, died in the City of New
Orleans, where he was domiciled. His succession was opened
on June 18th, 1918. The only heirs left by him were a brother,
Charles W. Gheens, a resident of New Orleans, and a number of
nephews and nieces, who all resided in Kentucy. He left a will
and two codicils, by which he made three particular legacies of
$5,000.00 each to as many charitable bodies, all domiciled in
Kentucy, and instituted his brother, Charles W. Gheens, his
universal legatee, ignoring his other collateral legal heirs.
He appointed three executors, one of whom was his brother and
universal legatee above named; they provoked the probate of the
wills; and on their allegation

             "that the only heirs left by the said John R. Gheens
             are collateral heirs, all of whom, except Charles W.
             Gheens, one of your petitioners, reside out of the
             State of Louisiana; but your petitioners aver that
             the will provides for legacies to persons residing in
             the State of Kentucy, and it is, therefore, necessary
             that an attorney be appointed to represent the absent
             heirs in these proceedings",

the Court appointed Delvaille H. Theard as

             "attorney to represent the absent heirs".

       The absent heirs, nephews and nieces, on January 29th,
1919 filed a suit to annul the will and codicils, on the ground
that they were not written by the deceased and that he was not
of a disposable mind. The suit was afterwards dismissed by
consent, and the universal legatee put in possession after pay-
ment of all debts and particular legacies by judgment rendered

515

■■■■■

June 4th, 1920.

But on May 24th, 1920 the attorney for absent heirs had taken a rule against the Executors to show cause

"why the special legacies of $5000 to the Steve Holcombe Mission of Louisville, Ky., and of $5000 to the Newsboys Home of Louisville, Ky., and of $5000 to the Home of the Innocents, of Louisville, Ky., should not be paid to mover, and why a fee of five per cent on the amount of said legacies should not be allowed to mover, said fee to be paid either out of the said legacies or by the residuary legatee herein, as this Court may determine &c ".

To this rule the Executors answered that it disclosed no cause of action; that the legacies mentioned therein had been paid; that if any sum is due, it is by the legatees and not by the Succession.

The rule was made absolute to the extent of fixing the fee of the attorney for absent heirs at $250 to be paid by the Executors.

From this judgment the Executors have appealed.

The attorney for absent heirs testified that the assets of the Succession amounted to about $700,000.00; that he notified the parties in interest of the opening of the Succession; and communicated with the three legatees; he participated in the taking of the Inventory and signed it; the Inventory amounted to $555,000.00; he thinks his services are worth $250.00; he never made any appearance in Court by pleading or otherwise except by signing the Inventory; the petition of the universal legatee to be put in possession was submitted to him and signed by him; when the absent heirs filed their suit to annul the wills he had several conferences with their attorney at law; as soon as he was appointed he examined the record, and had copies of the wills made for which he paid; there were many questions concerning the validity of the wills; he became aware that the absent heirs were represented here by counsel only after the filing of their suit to annul the wills.

The attorney for absent heirs has produced several letters and telegrams dated in September and October, 1918, ad-

dressed to him by persons in Louisville, signing the name of Gheens; but the name of none of those persons corresponds with the petitioners in the suit to annul. They advised him that they did not need his services.

The exception of no cause of action of the Executors is based upon two propositions:

1o That the special legatees named in the rule are not absent heirs, and therefore no attorney could be appointed to them.

2o It is an error to say that the attorney was appointed to represent these three legatees. The order of Court says, in so many words, that the attorney is appointed to represent "the absent heirs". The appointment was based upon the allegation contained in the petition of the universal legatee and Executors

> "that the only heirs left by the said John R. Gheens are collateral heirs, all of whom x x reside out of the State of Louisiana x x and it is, therefore, necessary that an attorney be appointed to represent the absent heirs in these proceedings".

It is thus made conclusive that the attorney was not appointed to represent the three legatees, but was appointed to represent the collateral heirs of the deceased who resided in Kentucy, and who subsequently filed suit to annul the will. The Executors and universal legatee were thereby estopped from contesting the validity of the appointment. 14 A. 399.

The case of Lacey vs Newport, 3 A. 226 relied on by defendants is not in point. In that case the testator had given

"to three of his brothers residing in Ireland" $1000 each; the Court appointed an attorney for absent heirs, who filed proceedings against the Executor and the widow to probate the will;

> "the defendants excepted to the action on the ground that there were no absent heirs".

The Court said:

"Legatees under a particular title are not heirs". It is evident that in that case the attorney for absent heirs was appointed to represent the three brothers as legatees and

517

not as heirs, and that the Court held that an attorney for "absent heirs" could not be appointed to an "absent legatee" who was represented by the Executor. There was no allegation or evidence in that case that the the testator had left any "absent heirs"; and, in fact, he could not have left any, since he lft his property by his will to his wife and children

"who were then and still are residents of this State". But in the case under consideration the testator has left a number of absent heirs.

Article C. C., 1210 (1204) provides:

"On opening of a vacant succession, or of one of which the heirs or part of them are absent from and not represented in the State, it is the duty of the Judge ordering inventories to be made of the effects of a succession, to appoint a counsel to the absent heirs, to assist at the inventories". ✓

C. C., 1216 (1210):

"The counsel of the absent heirs shall continue to act as such until the heirs present themselves or send their powers of attorney to claim the succession, or until the Curator is finally discharged".

C. C., 1661 (1654):

"When of the testators' heirs some are absent and not represented in the State, the judge shall appoint for them a counsel, whose duty it shall be to assist for them at the inventory of the effects left by the testator, to take care of their interests, and to oppose everything which may prejudice the same".

C. C., 1662 (1655):

"It shall also be the duty of this counsel to inform, with all possible diligence, those whom he represents, of the opening of the succession, and to correspond with them; and when he has once accepted this charge, he cannot divest himself of it, until the heirs have sent their power of attorney or until the succession is liquidated".

It is therefore evident that the Court properly ap-

pointed the attorney for absent heirs. The learned counsel for the Executors is forced to that admission himself; he says in his brief:

"As a matter of fact, there were absent heirs interested in this succession, but we are not here concerned with the validity of the appointment of a curator".

The attorney for absent heirs would have had the right to protect their interests by suing to annul the will, just as the heirs themselves did later. 145 La. 756.

llo The argument that the attorney for absent heirs has asked to be paid only by the three legatees or out of the share coming to them is not borne out by the rule. This clearly asks that

"said fee be paid either out of the said legacies or by the residuary legatee herein as this Court may determine &c ".

If it is true that the attorney represented the three absent legatees, as was held in 15 La. 66, and that he must be paid exclusively out of the funds coming to them, the Executors can hardly hope to be heard on that ground, after they have paid the absent legatees without protecting the attorney here. But if the attorney represents the absent heirs also, then he is equally entitled to be paid. It is true that if any amount had been coming to those heirs, it was just and legal that he should be paid out of that amount. 19 La. 425. But if those heirs inherited nothing, then the fee was properly chargeable to the Succession . 14 A., 399.

Article C. C. 1219 (1213) reads as follows:

"The counsel of absent heirs have a right to receive fees or emoluments proportioned to the pains taken in the performance of their duties, out of the funds of the succession of which they represent the heirs, but those fees or emoluments shall not be granted to them, except on proof being made of the services by them rendered, and of the value thereof, after having cited the heirs, if they present themselves, or the curator appointed to the succession in which these heirs have rights".

It has been decided that when there was no necessity for the appointment or when the attorney rendered no services to the succession, he was not entitled to be paid by the Succession. 4 La., 436; 125 La., 870.

But the jurisprudence is that when the services of the attorney for absent heirs have proved valuable to the sucdession, his fee is properly charged to the succession. 12 R., 413; 25 A., 647; 29 A., 7461 36 A., 304; 51 A., 1307. What the Court understood by services

"valuable to the succession"

is stated in 45 A., 248 in these words:-

"He (the Attorney) was active and energetic in his services. He communicated with the heirs or legatees. He attended the taking of the inventory for several days, was present in the District Court and in the Supreme Court in the litigation connected with the Succession".

It seems to us that the services rendered in that case are parallel to the services rendered in this case. In that case the Court allowed the attorney $700 to be paid by the Succession

"although there was nothing distributed through, or by him, to absent heirs".

Were it otherwise attorneys for absent heirs would receive no compensation in insolvent successions.

<div align="right">

Judgment affirmed.

February 21, 1921.